STATE OF MAINE                              SUPERIOR COURT
KENNEBEC, ss.                               CIVIL ACTION
                                            Docket No. AP-06-74


BATH IRON WORKS CORP.

            Petitioner

v.

MAINE WORKERS' COMPENSATION
BOARD

            Respondent

v.                                          DECISION AND ORDER

MAINE WORKERS' COMPENSATION
COORDINATING COUNCIL, et al.

            Intervenors

v.

MAINE HOSPITAL ASSOCIATION,

            Amicus Curiae


Pursuant to M.R. Civ. P. 80C,[1] the petitioner seeks judicial review of the

respondent Maine Workers' Compensation Board (the Board)'s final agency action with

regard to whether the respondent's 5% discount for prompt payment set out in the

Board Rule Chapter 5, Section 3,[2] satisfies the statutory requirements of title 39-A,

---

[1] In their complaint, the intervenors question whether the $60 conversion factor in the Board's Medical Fee Schedule is too high based on the terms of § 209. This issue is not part of the 80C Petition and has been briefed only by the respondent and the intervenors. Contrary to the Board's argument, consideration of this issue at this time appears contrary to the pre-trial orders dated 6/7/07 and 8/7/07.

[2] § 3. PAYMENT TO HOSPITALS

Hospital out-patient charges only are subject to this fee schedule to the extent that those services can be identified by CPT code.

section 209(1)(A) of the Maine Revised Statutes.[3] In count I of the petition, the petitioner requests that the court remand this matter to the Board to comply with the mandate of section 209(1)(A) by adopting "standards, schedules, or scales of maximum charges" for medical facilities. M.R. Civ. P. 80C(c); 5 M.R.S. §§ 11001(2) & 11007(4)(B) (2007).

The Board has established a fee schedule for maximum charges for professional or physician services, but has established only a 5% discount for prompt payment for hospital or facility charges. The petitioner argues that a 5% discount does not comply with the legislative mandate of section 209(1)(A) because 1) the schedule, standard or scale established by a 5% discount on charges determined by the hospital or facility does not as a matter of law comply with the mandate of section 209(1)(A); and 2) the Board was statutorily required to "consider maximum charges paid by private 3rd-party payors for similar services provided by health care providers in the State" in

---

Hospital reimbursement for services provided to an injured worker who is an inpatient at a hospital shall be discounted at 5% based on payment received within 30 days of the original billing date. Full hospital rates will apply when payment is not made within the 30-day period . . . .

The Workers' Compensation medical fee schedule for surgical procedures was intended to cover the professional component of those services only. It is not intended to cover the facility charges for those same services...Reimbursement for services provided to an injured worker who is an inpatient at a surgical center shall be discounted at 5% based on payments received within 30 days of the original billing date. Full rates will apply when payment is not made within the 30 day period.

(R. Vol. IX at 3620.)

[3] Title 39-A, section 209 of the Maine Revised Statutes provides, in part:

1. Standards, schedules or scales. In order to ensure appropriate limitations on the cost of health care services, the board shall adopt rules that establish:

A. Standards, schedules or scales of maximum charges for individual services, procedures or courses of treatment. In establishing these standards, schedules or scales, the board shall consider maximum charges paid by private 3rd-party payors for similar services provided by health care providers in the State and shall consult with organizations representing health care providers and other appropriate groups. The standards must be adjusted annually to reflect any appropriate changes in levels of reimbursement. The standards apply to hospital costs and health care providers and must be in effect no later than January 1, 1993 . . . .

establishing a schedule, standard or scale, and the record does not reveal that this was done.

> This case raises an issue of statutory interpretation by an administrative agency. Our primary purpose in statutory interpretation is to give effect to the intent of the Legislature. We do so first by reviewing the plain language of the statute, and if the language is unambiguous, we interpret the statute according to its plain language. When a statute is ambiguous we defer to the interpretation of the agency charged with its administration, if the agency's interpretation is reasonable.

Arsenault v. Secretary of State, 2006 ME 111, ¶ 11, 905 A.2d 285, 287-88 (citations omitted).

## I. Whether the 5% discount is a standard, schedule or scale identified in section 209(1)

After the parties filed briefs in this case, the Law Court rendered its opinion in the combined cases of Fernald v. Shaw's Supermarkets, Inc. and Babine v. Bath Iron Works, 2008 ME 81, 946 A.2d 395.[4] In the combined cases, the Law Court considered whether a Workers' Compensation Board hearing officer erred when, in the absence of a promulgated fee schedule for facility charges, the hearing officer ordered employers to pay the facility's "usual and customary charges" without allowing the employers to inquire about the amount charged to private third-party payors for the same services or to challenge the reasonableness of the charges. Id. ¶ 1, 946 A.2d at 396; 39-A M.R.S. §§ 209(1) & (2) (2007).

The Court affirmed the hearing officer's decisions. The majority opinion noted from the outset that "[t]he Workers' Compensation Board has not established maximum charges for medical facility charges." Id. ¶ 1, n.1, 946 A.2d at 396. The majority further explained, "[b]ecause the Board has not, to date, established maximum charges or a fee schedule for facilities such as CMO, health care facilities are entitled to be paid to the extent of their usual and customary charges, with a discount for timely payment." Id. ¶ 14, 946 A.2d at 400. The majority rejected the employers' proposed procedure, by which the "usual and customary"

---

[4] After a telephone conference with counsel, the court decided to wait for the Fernald decision to be issued before addressing this 80C petition.

charge by third-party payors is determined on a case-by-case basis because such an "ad hoc procedure raises the very likely scenario where different hearing officers might arrive at notably different figures for usual and customary charges for the same services by the same providers." Id. ¶ 24, n.11, 946 A.2d at 403. The majority reasoned that avoiding such potential inconsistency was "likely why the Legislature has rejected this approach and opted for maximum charges to be established by section 209(1)." Id.

The dissenters considered the failure of the Board to perform the statutory mandate with respect to facility charges a central piece in framing the question for resolution:

> The Board, however, has not promulgated rules establishing maximum charges applicable to facilities for outpatient surgical procedure. In the absence of rules promulgated by the Board, we are asked to decide whether workers' compensation insurers and employers are entitled to challenge the amount billed to them by outpatient surgical facilities on the ground that the charges are not the facility's "usual and customary charges" or that the charges are unreasonable.

Id. ¶ 27, 946 A.2d at 404. Challenging the majority's conclusion that the amounts charged by third-party payors are relevant only in the rulemaking process, the dissenters stated:

> The rulemaking process has not occurred, however, and to require employers and workers' compensation insurers to pay the amount unilaterally determined by the facilities without that amount being compared to and limited by what other private insurers are paying contravenes the intent of the Legislature.

Id. ¶ 35, 946 A.2d at 406.

The statute requires the Board first to establish a standard, schedule or scale of maximum charges for individual services. The Board argues that a 5% discount is a "standard" for maximum charges. The Board is entitled to deference of its interpretation of a statute only if that statute is ambiguous. Street v. Board of Licensing of Auctioneers, 2006 ME 6, ¶ 9, 889 A.2d 319, 322. The primary objective of interpretation of the statute is to give effect to the Legislature's intent. Town of Eagle Lake v. Commissioner, Department of Education, 2003 ME 37, ¶ 7, 818 A.2d 1034, 1037.

4

A "standard" is a "criterion for measuring acceptability, quality or accuracy." BLACK'S LAW DICTIONARY 1413 (7th ed. 1999). The criterion in this instance is to be established by the Board for measurement of the "acceptability, quality or accuracy" of charges by service providers for particular services. That "criterion" is to be established in consideration of maximum charges to third-party payors. A 5% discount does not establish a criterion for measurement of the acceptability of charges for individual services and is not the standard contemplated by the statute. Instead, amounts that are not standardized but are unilaterally established by a medical provider are discounted by 5%. The majority and dissenters in Fernald agreed that the Board has not yet established "maximum charges for medical facility charges" mandated by section 209(1). 2008 ME 81, ¶¶ 23 & 27, 946 A.2d at 403, 404. As the Fernald majority stated, "[u]nless the maximum charges are promulgated, employers and insurers who have not negotiated discounted rates for services will continue to be denied the fee alternatives provided by 39-A M.R.S.A. § 209(2) (2007)." Id. ¶ 1, n.1, 946 A.2d at 396.

The mission of the Blue Ribbon Commission "was to propose changes to the Maine Workers Compensation system to reduce costs and to allow the system to function more efficiently." Report dated 8/31/92 at 5; see Coulombe v. Anthem Blue Cross/Blue Shield of Maine, Inc., 2002 ME 163, ¶ 16, 809 A.2d 613, 616-17; (see also R. Vol. I at 14) ("One thing remains certain, and that is that there is a need to control medical benefits in Workers' Compensation."). A discount from amounts established by the providers cannot accomplish those goals. (See, e.g., R. Vol. VIII at 3231-32.)

II. Whether the Board considered maximum charges paid by private third-party payors in establishing a 5% discount

The statute mandates that in "establishing these standards, schedules or scales, the board shall consider maximum charges paid by private 3rd-party payors for similar services provided by health care providers in the State." 39-A M.R.S. § 209(1)(A) (2007). The Fernald

majority concluded that in discerning the meaning of usual and customary charges, "amounts negotiated as payment for services by private third-party payors are relevant only in the rate making process pursuant to section 209(1)(A)." 2008 ME 81, ¶ 25, 946 A.2d at 403. Although they disagreed about the meaning of "usual and customary charges," the majority and the dissenters agreed that the rate making process has not occurred.[5] Id. ¶¶ 1, 14, 15, 27, 29, 35, n.1, 946 A.2d at 396, 400-01, 404-406.

---

[5] Even assuming that a 5% discount is a standard, schedule or scale, the record must demonstrate that the Board considered the maximum charges paid by private third-party payors in Maine for similar services in adopting a 5% discount.

In 1996-1997, after studying the number of different methods utilized by other states and considering that hospital costs were controlled by "significant competition in the health care market," the Office of Medical/Rehabilitation Services submitted to the Board a recommendation that "hospitals be paid their usual charge, minus a percentage." (R. Vol. I at 2, 14, 17.) The Board did not then take final action on the Office's recommendations. The issue came up again in 1998, at which time the Board sent to public hearing a proposed discount method providing reimbursement "at 90% of the charge for services." (R. Vol. III at 460.) At the December 16, 1998 public hearing, Kevin Behre from the Maine Hospital Association testified in opposition to the 10% discount:

> Such a discount is well in excess of what hospitals provide organizations that represent a significant portion of their business and with whom there is a recognized value for such a discount. Typically, discounts such as these are tied to performance of contract items such as prompt payment. Hospitals have historically provided discounts to a major payer because that payer provides for weekly payments to hospitals, based on projected claims from that hospital . . . It is patently unfair to provide a larger discount to a payer that routinely causes significant delay in payment and requires substantial administrative effort . . . The benefit of prompt payment and streamlining billing procedures (not increasingly complex billing procedures) may justify some discount and should be pursued. A 10% discount however would not be justified on that basis.

(R. Vol. III at 480-81.)

In written comments, the Associate Director of Redington-Fairview General Hospital provided a similar perspective:

> First, a 10-percent discount for treating injuries to workers is substantially greater than any discount which is provided to any commercial carrier at Redington-Fairview General Hospital. Typical of most small rural hospitals, our average margin is less than 3 percent. Since we are heavily dependent on Medicare, Medicaid and uninsured (72% of our patients), our charges have to increase by four dollars for each dollar of reduction in payment. Consequently, we can not afford to give such large discounts to commercial carriers and have our charge structure remain competitive. I would suggest that a 2-percent discount would be more financially manageable;

> Second, negotiated discounts are usually tied to prompt payment. Slow payment is a common problem for our hospital in dealing with workers' compensation carriers. I would suggest that, in order to earn a discount of five percent, the carrier would have to

The entry is

> This case is REMANDED to the Maine Workers' Compensation Board to comply with 39-A M.R.S. § 209(1)(A) with regard to medical facilities.

Date: August 11, 2008

Nancy Mills
Justice, Superior Court

AP-06-74

---

pay the claim within forty-five days of billing. If payment was not made within forty-five days, then the carrier would lose the discount.

(R. Vol. III at 496.)

The respondent further points to the reconsideration of the discount in 2004-2005, in which it ultimately decided not to change the discount, and contends that this decision was partially based on discussion of the lower charges to third-party payors. (See, e.g., R. Vol. VIII at 3226-28.) Respondent contends that this oral and written testimony, particularly the aspects of that testimony regarding a 10% discount being in excess of the discounts provided to third-party payors, demonstrates that it complied with section 209(1)(A) by considering maximum charges paid by third-party payors for similar services.

Petitioner argues that these record citations to the extent that they reveal any consideration of third-party payor maximum charges occurred subsequent to respondent's decision on a 10% discount rate, and the record does not demonstrate that the discount rate was reached in consideration of third-party payor charges in the State of Maine.

The record reveals more frustration with the absence of third-party payor charges in the State than it does the agency's consideration of that information. At a meeting of the Consensus based Rulemaking Committee on 11/3/04, Elizabeth Inman, Director of Office of Medical/Rehabilitation Services, admitted that data regarding payment from insurers to hospitals is "not data we collect." (R. Vol. VIII at 3227-28.)

The issue is not whether there is substantial evidence in the record to support a 5% payment discount. The issue is whether the record demonstrates that in promulgating a 5% payment discount, the Board complied with the statute's requirement that it consider third-party payor information. The record reveals that the Board did not consider maximum charges paid by private third-party payors for similar services provided by health care providers in the State, as required by section 209(1)(A). See Seider v. Board of Examiners of Psychologists, 2000 ME 118, ¶ 29, 754 A.2d 986, 993.

7

Date Filed __10/31/06__ ____Kennebec____ Docket No. __AP06-74__
County

Action ___Petition for Review___
80C

- Jerrol A. Crouter, Esq. (W. Comp Board
  Drummond Woodsum
  PO Box 9781, 245 Commercial Street
  Portland, ME 04104-5081
  **J. STUDSTRUP**

-Steven Johnson, Esq. (MHA)
160 Capitol St. Suite 4
Augusta Maine 04330

___Bath Iron Works Corporation___ VS. __Maine Workers' Compensation Board__

Plaintiff's Attorney Jonathan W. Brogan, Esq.
John H. King, Jr., Esq.
James D. Poliquin, Esq.
Lance E. Walker, Esq.
415 Congress Street
P.O. Box 4600
Portland, Maine 04112-4600

Defendant's Attorney

- John C. Rohde, Esq.
  Workers' Compensation Board
  27 State House Station
  Augusta, ME 04333- 0027

- L DENNIS CARILLO ESQ (INTERVENORS)
  PO BOX 15215
  PORTLAND MAINE 04112
- John F. Lambert, Jr., Esq.

| Date of Entry | |
|---|---|
| 10/31/06 | Petition for Review, Rule 80C and Complaint for Independent Relief, Rule 80C(i) and Complaint for Injunctive Relief, filed. s/King, Jr., Esq., s/ Poliquin,1 Esq. and s/Walker, Esq. |
| 11/13/06 | Plaintiff's Motion to Specify the Future Course of Proceedings, filed. s/Poliquin, Esq. |
| 11/20/06 | Answer, filed. s/Rohde, Esq. |
| 11/22/06 | Summons and Acknowledgment of Receipt of Complaint, filed. Served on Paul Dionne, Exec. Director, on 11/15/06. (Summons unsigned.) |
| 12/11/06 | Motion for Intervention and Incorporated Memorandum of Law, filed. s/ Lambert, Esq. Complaint of Intervenors, filed. s/Lambert, Esq. Proposed Order, filed. |
| 12/21/06 | Defendant's Opposition to Motion for Intervention filed by Maine Workers' Compensation Coordinating Council, et al filed. s/Rohde, Esq. Certificate of Service, filed. s/Rohde, Esq. |
| 12/28/06 | Motion to Extend Deadline for Reply to Defendant's Opposition to Motion for Intervention Filed by Maine Workers' Compensation Coordinating Council, et al, filed. s/Carrillo, Esq. |
| 12/28/06 | Letter informing the court that defendant does not object to enlargement of time for filing the reply memorandum, filed. s/Carrillo |
| 1/2/07 | Motion to Extend Page Limit for Reply to Opposition to Motion for Intervention filed by Maine Workers' Compensation Coordinating Council, et al, filed. s/Lambert, Jr., Esq. Proposed Order, filed. |
| | Reply to Defendant's Opposition to Motion for Intervention filed by Maine Workers' Compensation Coordinating Council, et al, filed. s/ Lambert Jr., Esq. |

| Date of Entry | Docket No. _____ |
|---|---|
| 1/4/07 | ORDER ON MOTION FOR EXTENSION, Studstrup, J.<br>It is hereby ORDERED that the applicants may file their reply to opposition on or before January 2, 2007.<br>Copies mailed to attys of record. |
| 1/10/07 | ORDER ON MOTION TO EXTEND PAGE LIMITS, Studstrup, J.<br>Copis mailed to attys of record. |
| 1/19/07 | Motion of Maine Hospital Association for Leave to File As Amicus Curiae, filed. s/Johnson, Esq.<br>Proposed Order, filed. |
| 1/22/07 | ORDER ON MAINE HOSPITAL ASSOCIATION'S MOTION FOR LEAVE TO FILE AMICUS CURIAE, Studstrup, J.<br>Copies mailed to attys of record. |
| 1/30/07 | Motion For Intervention By The Maine Workers' Compensation Residual Market Pool And Incorporated Memorandum Of Law, filed 01/29/07.<br>s/Lambert, Esq.<br>Proposed Order. |
| 2/6/07 | Hearing held on Motion for Intervention with the Hon. Justice Kirk Studstrup, presiding.<br>James Poliquin, Esq. for the Petitioner, Dennis Carrillo, Esq. and John Rohde, Esq. for the Respondents.<br>Court GRANTS motion. Copies mailed to attys. of record. |
| 2/22/07 | Defendant's Answer to Complaint of Intervenors, filed. s/Rohde, Esq.<br>Defendant's Motion to Dismiss Count One of Complaint of Intervenors and Incorporated Memorandum of Law, filed. s/Rohde, Esq.<br>Proposed Order, filed. |
| 3/19/07 | Intervenors' Opposition to Defendant's Motion to Dismiss Count One of the Intervenors' Complaint, filed. s/Carrillo, Esq. |
| 4/4/07 | Letter requesting a conference of counsel, filed. s/Poliquin, Esq. |
| 4/12/07 | Entry Of Appearance, filed. s/Crouter, Esq. |
| 4/13/07 | Notification of Discovery Service, filed.<br>Deft's General Objection to Intervenors' Request For Production of Documents, served on J. Lambert on 04/12/07. |
| 4/18/07 | Plaintiff's Conference of Counsel Memorandum, filed. s/Poliquin, Esq. |
| 4/24/07 | HEARING/CONFERENCE RECORD, Studstrup, J. (hearing held on 4/19/07)<br>James Poliquin, Esq., John Lambert, Esq., John King, Esq., Jerrol Crouter, Esq. and John Rhode, Esq. participating in call.<br><br>The entry will be:  All parties to submit memos by 4/27/07 on the proper jurisdiction of the Superior Court with regard to Rule 80C appeal and independent basis for relief.<br>Copies mailed to attys of record. |
| 4/27/07 | Maine Workers Compensation Board's Memorandum on Jurisdictional Issues, s/Crouter, Esq. |
| ------ | BIW's Supplemental Memorandum RE:Issues for Conference of Counsel, filed. s/Walker, Esq. |
| ------ | Intervenors' Motion to Strike and Request for Evidentiary Hearing, filed. s/Lambert, Esq.<br>Proposed Order, filed. |

| Date of Entry | Docket No. AP-06-74<br>Bath Iron Works Corporation vs. Maine Workers compensation Board |
|---|---|
| 5/4/07 | Letter regarding status of case, filed. s/Poliquin, Esq. |
| 5/8/07 | Maine Workers' Compensation Board's Memorandum in Opposition to Motion to Strike, filed. s/Crouter, Esq. s/Rohde, Esq. |
| 5/15/07 | Intervenors' Reply in Support of Their Motion to Strike and Request for Evidentiary Hearing, filed. s/Cloutier, Esq. |
| 5/17/07 | Letter from attorney Poliquin regarding the scheduling of a conference. |
| 5/22/07 | Notice of setting of conference of counsel on June 7 @ 3:00 p.m. sent to attys of record. |
| 5/24/07 | Entry of Appearance, filed. s/Brogan, Esq. |
| 6/4/07 | Motion for Leave to File Brief on Amicus Curiae, filed. s/Rohde, Esq. Proposed Order, filed. |
| 6/7/08 | HEARING/CONFERENCE RECORD, Studstrup, J.<br>Counsel present for conference of counsel. Court to issue order<br><br>In light of WCB's position that it has already adopted a fee schedule/ standard per the statute, the Board will prepare an administrative record by 7/9/07. Filing of briefs will be per Rule 80C. Independent claims will be reserved.<br>Copies mailed to attys of record. |
| 6/13/07 | Maine Workers Compensation Board's Motion To Dismiss, filed 6/11/07. s/Crouter, Esq.<br>Request For Hearing, filed. s/Crouter, Esq. |
| 6/30/07 | Motion for Extension, filed. s/Poliquin, Esq. |
| 7/9/07 | Administrative Record (Vol. 1,2,3,4A,4B,6A,7,8,9, and 10), filed. s/Rohde, |
| ------ | Bath Iron Works Corporation's Opposition to the Maine Worker's Compensation Board's Motion to Dismiss, filed. s/Poliquin, Esq.<br><br>Proposed Order on Defendant's Motion to Dismiss, filed.<br><br>Notice of setting for 8/7/07<br><br>sent to attorneys of record. |
| 7/23/07 | ORDER ON MOTION FOR EXTENSION, Marden, J. (dated 7/18/07)<br>Time extended to 7/9/07.<br>Copies mailed to attys of record. |
| 8/7/07 | Hearing held with the Hon. Justice Kirk Studstrup, presiding. No Clerk Jerrol Crouter, Esq., John Rohde, Esq. Lance Walker, Esq. and Dennis Carrillo, Esq. present.<br>HEARING/CONFERENCE RECORD, Studstrup, J.<br>Hearing and decision on the motion to dismiss will be reserved pending decision on the Rule 80C appeal portion of the litigation. No further hearing should be scheduled inclusding the intervenors complaint until the 80C appeal is resolved. Briefing and hearing to proceed in accordance with the rule.<br>Copies mailed to attys. of record. |
| 8/20/07 | 8/17/07: Motion to Extend Briefing Schedule with Proposed Order. s/.Poliquin J. Poliquin. |

| Date of Entry | Docket No. |
|---|---|
| 8/22/07 | 8/21/07: Motion to Extend Briefing Schedule ORDER: Upon motion of Plaintiff/Petitoners BIW, the Petitions' briefs shall be filed on or before September 25,2007,Respondents' brief filed on or before October 25,2007 and Plaintiff's/ Petitioner's reply brief filed by November 8,2007.s/Studstrip Copies mailed to parties |
| 9/25/07 | Motion to Extend Briefing Schedule, filed. s/Poliquin, Esq. Proposed Order, filed. |
| 9/27/07 | ORDER, Studstrup, J. Upon motion of Plaintiff/Petitioner BIW, the Petitioners' briefs shall be filed on or before October 5, 2007, Respondents' brief filed on or before November 5, 2007, and Plaintiff/Petitioner's reply brief filed by November 16, 2007. Copies to attys. of record. |
| 10/5/07 | Brief of Plaintiff BIW on Issue of Whether Board Rule, Chapter 5,§3 Providing a 5% Discount of Facility Charges Satisfies the Board's Rulemaking Obligations Under 39-A M.R.S.A. §209(1)(A), filed. s/Poliqui Brief of Intervenors on the Legality of the Five(5)Percent Discount Program for Hospitals, Ambulatory Surgery centers, and Emergency Rooms Stated in Chapter 5, Section 3 of the maine Workers' Compensation Board Rules and Regulations, filed. s/Lambert, Esq. |
| 10/30/07 | Amicus Curiae Maine Hospital Association's Unopposed Motion for Enlargm of Time to File Amicus Brief, filed. s/Johnson, Esq. Proposed Order, filed. |
| 11/5/07 | ORDER: Motion for enlargement of time to file Amicus Brief,,this Court Grants MHA's Motion. (1)MHA is hereby granted an 8 day enlargement of time in which to file its brief as amicus curiae: and (2)The Court's prior scheduling Order dated September 27,2007 is hereby amendedto indicate that MHA's brief shall be due on November 3,2007. |
| 11/5/07 | Assented to Motion for Three-Day Extension of Time to File Brief, s/Crouter, Esq. Proposed Order, filed. |
| 11/9/07 | ORDER AMENDED 11/8/07: MHA's brief due 11/13/07. Mills, J. Copy to attorneys. |
| 11/13/07 | MAINE WORKERS COMPENSATION BOARDS BRIEF ON THE PROPRIETY OF THE RULE MAKING PROCESS WHICH DEVELOPED THE BOARDS STANDARD FOR PAYMENTS FOR FACILITIES CHARGES AND THE CONVERSION FACTOR. FILED BY J ROHDE |
| 11/13/07 | BRIEF OF AMICUS CURIAE MAINE HOSPITAL ASSOCIATION ON WHETHER THE WORKER COMPENSATION BOARD HAS COMPLIED WITH ITS RULE-MAKING MANDATE UNDER 39-A M.R.S.A. 209(1)(A). Filed by S.Johnson |
| 11/21/07 | Motion for Enlargment of Time to File Reply Brief, filed. s/Lambert, Es |
| 11/30/07 | Reply Brief of Plt BIW on Issue of Boards Compliance with Rulemaking obligations under 39- A M R S A 209 (1)(A). filed byJ.Poloquin and Joh King Esq. |
| 12/5/07 | Motion For Enlargement Of Time to File Reply Brief, filed 11/30/07. s/Lambert, Esq. |
| 12/7/07 | Reply Brief of Intervenors, filed. s/Lambert, Esq. |

Bath Iron Works Corp vs. Maine Workers Comp Board

| Date of Entry | |
|---|---|
| | Docket No. AP-06-74 |

| Date of Entry | |
|---|---|
| 12/13/07 | ORDER, Mills, J. (12/11/07)<br>Defendant's Motion For 3-Day Extension To File Brief is granted. Defendant's brief shall be filed on November 8, 2007. Plaintiff and Intervenors shall file any reply briefs no later than November 21, 2007. Copy to attorneys. |
| 12/13/07 | ORDER, Mills, J. (12/11/07) (Motion For Enlargement filed 11/21/07)<br>Reply brief will be mailed by 11/30/07. |
| 12/13/07 | ORDER, Mills, J. (12/11/07) (Motion For Enlargement filed 11/30/07) |
| 6/18/08 | Letter re: decision from the Law Court in Babine v. BIW, filed. s/Poliquin, Esq. |
| 8/12/08 | DECISION AND ORDER, Mills, J. (8/11/08)<br>This case is REMANDED to the Maine Workers' Compensation Board to comply with 39-A M.R.S. §209(1)(A) with regard to medical facilities.<br>Copy mailed to attorneys of record.<br>Copy mailed to Donald Goss, Garbrecht Law Library, and Deborah Firestone. |